UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

MARK BLAKE and BEAU GERTZ

      Plaintiffs,

v.

DAVID GOLDNER, PAUL BURNS,
NANCY OSER, NATHANIEL MOORE,
JEFFREY GLEASON, STEVEN COHEN
and LINDA KEARNEY

      Defendants.
_____/

Case No.: 3:24-cv-01359-TJC-PDB

## FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

Plaintiffs Mark Blake and Beau Gertz bring this First Amended Complaint against David Goldner (Goldner), Paul Burns (Burns), Nancy Oser (Oser), Nathaniel Moore (Moore), Jeffrey Gleason (Gleason), Steven Cohen (Cohen) and Linda Kearney (Kearney) and allege as follows:

### NATURE OF THE CASE

This is an action pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO) to obtain damages to compensate Plaintiffs for the injuries they have suffered as a result of Defendants' pattern of obstruction of justice. They have joined forces to implicate Plaintiffs in an insurance fraud scheme by fabricating evidence. This conspiracy resulted in a civil judgment

1

being entered against Plaintiffs for $25.9 million.  Defendants undertook this scheme to benefit their employer Elevance Health Inc. f/k/a Anthem Inc. ("Elevance"), a large health insurer.

## PARTIES, JURISDICTION, AND VENUE

1. This court has subject matter jurisdiction of this case as a federal question pursuant to 28 U.S.C. § 1331 and RICO's civil damages provision, 18 U.S.C. § 1964(c).

2. This court has personal jurisdiction over David Goldner pursuant to 18 U.S.C. §1965(a) because he is a resident of the Middle District of Florida.

3. With jurisdiction over Goldner, this Court also has jurisdiction over his co-conspirators, the other Defendants, as "the ends of justice" require all Defendants be part of this action as provided by 18 U.S.C. §1965(b). Moreover, the same result is reached pursuant to 18 U.S.C. §1965(d).

4. Venue is proper in this Court pursuant to 18 U.S.C. §1965(a) because of Goldner's residency.

## STATEMENT OF FACTS

5. Defendants conspired to and did prepare a spreadsheet that altered patient claims data after the claims were out of the control of the Plaintiffs and after the claims were adjudicated and paid by Elevance (hereafter the "Falsified Spreadsheet") for use at the Plaintiffs' civil trial, and

which was admitted into evidence in order to prove that Plaintiffs had committed fraud. The Falsified Spreadsheet was created by Defendant Burns pursuant to an agreement with the other Defendants. Defendants also provided the Falsified Spreadsheet to a grand jury in the Middle District of Florida to bring about criminal indictments of Plaintiffs and other victims of their scheme to obstruct justice.

6. The conspiracy started on October 14, 2016, when Goldner, a fraud investigator with Florida Blue, prepared a report falsely accusing the laboratories associated with Campbellton-Graceville Hospital in Graceville, Florida and their owners of submitting fraudulent claims to insurers for reimbursement. Goldner was directed to do so by Allen Hall, a senior attorney for Florida Blue, an affiliate to Elevance. Hall was collaborating with Kearney and Cohen, who as detailed below, were working for Elevance.

7. Plaintiffs owned one of the laboratories, SeroDynamics LLC, that was providing services for the hospital.

8. In October 2016, Goldner sent the report to Special Agent Derek Holt of the U.S. Office of Personnel Management and Special Agent Robert A. Schwinger of the F.B.I., both in Jacksonville, Florida. When he did so, Goldner believed and hoped the report would be the basis for the creation of falsified evidence which would be used by federal prosecutors to obtain indictments against Plaintiffs and the other victims of the scheme, who were

3

indicted, as detailed below.

9. In January 2018, Paul Burns, a business information developer for Elevance was directed by Kearney and Cohen to create the Falsified Spreadsheet representing a group of claims that the Insurers were going to contend were fraudulent. Kearney and Cohen directed him to do this so the Falsified Spreadsheet would corroborate Goldner's report.

10. Burns proceeded to create the Falsified Spreadsheet knowing at all times that the claims data represented in it was not fraudulent. But the data Burns knowingly depicted on the Falsified Spreadsheet was. Burns conspired with Goldner in doing this, and Goldner was in agreement with this plot to create the impression of massive criminal fraud.

11. Burns and Goldner knew the Falsified Spreadsheet would be provided to federal prosecutors in the Middle District of Florida to implicate Plaintiffs and others in criminal fraud. Burns gave the document to Moore under the direction of Kearney for this purpose.

12. Following that, in April 2018, Cohen, Kearney and lawyers for Elevance, Gleason and Moore, held a conference call with Holt, Schwinger, Assistant U.S. Attorney Tysen Duva, Department of Justice Senior Attorneys Gary Winters and Salley Malloy in Jacksonville about establishing a case of criminal healthcare fraud against the owners of the laboratories associated with certain hospitals. The prosecutors had convened a federal grand jury to

hear evidence of possible crimes. They wanted the actual claims data that Elevance relied upon to pay the claims. Cohen, Kearney, Gleason and Moore told the prosecutors that they would provide them with the actual claims data to substantiate health care fraud. Burns and Goldner knew about the call and were in agreement with what transpired.

13. In response to that call, the prosecutors issued a federal grand jury subpoena for the actual claims data. The Defendants agreed among themselves to respond to the subpoena by providing the Falsified Spreadsheet in lieu of the actual claims data.

14. In April 2018, Moore, a lawyer at the law firm of Robins Kaplan LLP in Minnesota representing Elevance, and at the direction of Cohen and Kearney, tendered Burns' Falsified Spreadsheet to the federal grand jury convened by the U.S. Attorney's office in the Middle District of Florida for purpose of procuring indictments. This violated 18 U.S.C. §1512(c)(2) by corruptly influencing an official proceeding with false, incriminating evidence and was undertaken with the approval of all Defendants.

15. In July 2018, Gleason, a colleague of Moore's at Robins Kaplan, joined with Moore in filing a civil suit in the Western District of Missouri against Plaintiffs claiming they transmitted the data that was falsified by Burns in the Falsified Spreadsheet.

16. In September 2021, the civil case was tried. Gleason, being

directed by Kearney, who was present, introduced the Falsified Spreadsheet authored by Burns into evidence rather than producing Elevance's actual claims data despite the actual claims data being in his possession. This violated 18 U.S.C. §1512(c)(2). This use of the Falsified Spreadsheet was also undertaken with the agreement of all Defendants.

17. Defendant Oser, an Elevance employee, authenticated the Falsified Spreadsheet at the direction of Kearney and Gleason at the civil trial. She thus joined the conspiracy to obstruct justice. She knew the objective of the conspiracy was to use the False Spreadsheet in other trials as well.

18. On September 30, 2021, the Defendants' conspiracy to obstruct justice resulted in a jury verdict against Plaintiffs for $18,053,015 in compensatory damages and $7,600,000 in punitive damages in the civil trial.

19. In May 2022 at the criminal trial of Jorge Perez, Ricardo Perez, James Porter, Christian Fletcher and others in the Middle District of Florida, prosecutors introduced into evidence the same Falsified Spreadsheet used in the civil trial. The Defendants knew about and approved of this additional violation of 18 U.S.C. §1512(c)(2). After obtaining plea agreements and convictions against some criminal defendants and a hung jury on others, the government chose to retry the case against those individuals who had not been convicted.

20. The Defendants agreed to a further use of the Falsified Spreadsheet at the retrial in order to obstruct justice and obtain convictions.

21. In March 2023, at the criminal re-trial, the government once again introduced the same Falsified Spreadsheet into evidence with the approval of all Defendants. This was a fourth violation of 18 U.S.C. §1512(c)(2).

22. Although the criminal defendants were acquitted, the conspiracy to use the Falsified Spreadsheet was completed. The acquitted criminal defendants have pending RICO lawsuits against Elevance in Florida and Georgia.

23. In conclusion, the Defendants conspired to use the Falsified Spreadsheet at the civil trial and two criminal trials, resulting in separate sets of injuries to two sets of victims.

## CLAIM FOR RELIEF

24. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 23.

25. Each Defendant participated in the overall scheme to obstruct justice through the creation and use of the Falsified Spreadsheet in three federal trials and before a federal grand jury. They did so despite their entry into the conspiracy at different times. Thus, each Defendant is guilty of conspiring to violate 18 U.S.C. §1512(c)(2) by corruptly influencing official

proceedings by the use of false, incriminating evidence.

26. The violation of 18 U.S.C. §1512(c)(2) is made a form of "racketeering activity" by 18 U.S.C. §1961(1)(B).

27. Each Defendant has participated in the racketeering activity on behalf of Elevance management.

28. Elevance, f/k/a Anthem, is a corporation and thus a RICO enterprise pursuant to 18 U.S.C. §1961(4).

29. It affects interstate commerce by insuring people in multiple states.

30. Accordingly, each Defendant has violated 18 U.S.C. §1962(d) by participating in the two overall scheme, which entailed ongoing violations of 18 U.S.C. §1962(c), which makes it a crime for "any person employed by or associated with any enterprise… to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity…"

31. The pattern of violations of 18 U.S.C. §1512(c)(2) began in October 2016 and continued until March 2023, and entailed several discrete violations of the statute to corrupt a federal grand jury, a federal civil trial and two federal criminal trials.

32. This conspiracy has proximately damaged plaintiffs by causing the jury in their civil trial to enter a verdict against them for $25.9 million

plus post-trial interest.

33.   Thus, Plaintiffs assert civil RICO claims against all Defendants for the amount of their damages, $25.9 million, trebled, plus pre-judgment interest, costs, and reasonable attorney's fees, pursuant to 18 U.S.C. §1964(c), totaling at least $78 million.

## PRAYER FOR RELIEF

**WHEREFORE**, Blake and Gertz each pray for judgment against Defendants as follows:

1.   Awarding both Blake and Gertz damages of at least $78 million, pursuant to 18 U.S.C. § 1964(c);

2.   Pre-judgment interest, costs, and reasonable attorneys' fees;

3.   Any other relief this Court deems just and proper,

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable in this action.

Dated: April 16, 2025.

                                        Respectfully submitted,

                                        By: */s/ Mark Blake*
                                        Mark T. Blake, Esquire
                                        Florida Bar No. 368881
                                        marktblake111@gmail.com
                                        MARK T. BLAKE, LL.M. P.A.
                                        914 Poinciana Lane
                                        Winter Park, FL 32789
                                        (813) 480-6828

> Lead Counsel
> Howard Foster
> FOSTER PC
> 155 N. Wacker Drive
> Suite 4250
> Chicago, IL  60606
> (312) 726-1600
> hfoster@fosterpc.com

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

> */s/ Mark Blake*
> Mark Blake