UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARK BLAKE and BEAU GERTZ,

        Plaintiffs,

v.

        Case No. 3:24-cv-1359-TJC-PDB

DAVID GOLDNER, PAUL BURNS,
NANCY OSER, NATHANIEL MOORE,
JEFFREY GLEASON, STEVEN COHEN
and LINDA KEARNEY,

        Defendants.

## O R D E R

Following a 2021 civil jury trial in a healthcare billing fraud case in the Western District of Missouri, that court entered an amended judgment against Mark Blake, Beau Gertz and others for approximately $25.9 million in compensatory and punitive damages.  See RightCHOICE Managed Care, Inc., et al. v. Hosp. Partners, Inc., et al., No. 5:18-cv-6037-DGK (W.D. Mo. Oct. 27, 2022), Doc. 828.   After exhausting efforts to secure reversal with the trial court and on appeal, Blake and Gertz filed this suit in the Middle District of Florida, alleging that defendants—some of whom were involved in the Missouri civil trial as witnesses, lawyers, or party representatives—engaged in a RICO conspiracy to fabricate evidence used at the civil trial as well as in criminal proceedings here in the Middle District of Florida.   Blake and Gertz seek

damages of over $78 million (trebling the damages they owe under the Missouri judgment).[1]

The defendants here jointly move to dismiss or transfer venue, invoking issues of personal jurisdiction, venue, res judicata, collateral estoppel, and failure to state a claim (Doc. 57); plaintiffs responded (Doc. 62); defendants replied (Doc. 67); and plaintiffs filed a sur-reply (Doc. 68). "As a general rule, when the court is confronted by a motion raising a combination of Rule 12(b) defenses, it will pass on the jurisdictional issues before considering whether a claim was stated by the complaint." Madara v. Hall, 916 F.2d 1510, 1513-14, & 1514 n.1 (11th Cir. 1990) (quoting C. Wright & A. Miller, Federal Practice and Procedure: Civil 2d § 1351, at 243-44). The Court construes any evidence related to jurisdictional facts in the light most favorable to plaintiff, especially where the jurisdictional questions are "intertwined with the merits of the case." Delong Equip. Co. v. Washington Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988) (citations omitted). Here, the materials before the court include the allegations of plaintiffs' amended complaint (Doc. 54), an exhibit filed by Blake demonstrating that he is a Florida resident[2] (Doc. 62-2), a report allegedly

---

[1] Blake and Gertz also filed a legal malpractice case against their attorney and his law firm. That action remains pending in St. Louis, Missouri state court. See W.D. Mo. docket No. 5:18-cv-6037-DGK, Doc. 904 (Blake and Gertz Feb. 4, 2026 motion to modify protective order to secure use of documents for their state malpractice case).

[2] Plaintiffs' sur-reply states that Gertz resides in Colorado. Doc. 68 at

2

prepared by defendant David Goldner that is referenced in the amended complaint[3] (Doc 57-1), and the public records of the prior proceedings at which the allegedly fabricated evidence was submitted.[4]   And, of course, one of those proceedings was a criminal case over which the undersigned presided, United States v. Jorge Perez, et al., No. 3:20-cr-86-TJC-SJH.

Under 18 U.S.C. § 1965(a), a plaintiff may bring a civil RICO action against "any person" in "any district in which such person resides, is found, has an agent, or transacts his affairs."   18 U.S.C. § 1965(a).   This subsection provides the basis for plaintiff to exercise personal jurisdiction over defendant David Goldner, who is alleged to be a resident of the Middle District of Florida (an allegation he does not dispute), and further provides that, as to Goldner, venue is proper here.[5]   Thus, for purposes of establishing personal jurisdiction

---

3.

[3] Though submitted by defendants, plaintiffs have not challenged that this is the document they reference in their complaint (Doc. 54 (Amended Complaint) at ¶¶ 6, 8, 9).   The Court may also consider this document as part of its Rule 12(b)(6) analysis.   See Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) ("[A] document attached to a motion to dismiss may be considered by the court [on a Rule 12(b)(6) motion] if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed") (citations omitted).   This document satisfies that standard.

[4] In addition to considering these court files for purposes of assessing the jurisdictional questions, the Court may consider them as part of its Rule 12(b)(6) analysis.   See, e.g., Lozman v. City of Riviera Beach, 713 F.3d 1066, 1075, n.9 (11th Cir. 2013) (authorizing judicial notice of public records, particularly those referenced in a complaint, when weighing a 12(b)(6) motion).

[5] Goldner is the only defendant whose residency is included in the

and venue as to Goldner, the Court need not determine whether a "colorable claim" has been alleged as to him—by virtue of his uncontested residence in the Middle District of Florida, § 1965(a) of the RICO statute provides all that is needed.[6]   In that regard, the Court rejects defendants' contrary reading of the statute.

As to the non-resident defendants, § 1965(b), in turn, provides that "other parties residing in any other district" may be brought before the court if "it is shown that the ends of justice" so require.   18 U.S.C. § 1965(b).   And subsection 1965(d) provides for nationwide service of process which, at least in the Eleventh Circuit, "becomes the statutory basis for personal jurisdiction." Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 942 (11th Cir. 1997) (citation omitted).[7]   Nonetheless, a non-resident defendant may still challenge personal jurisdiction under a Fifth Amendment due process analysis by showing that litigation in a plaintiff's choice of forum is "unconstitutionally burdensome."   Id. at 947.   But such showing is rare,

---

amended complaint.   Summonses were issued for the other defendants at addresses in Ohio, Minnesota, California, Indiana and Kentucky (see Docs. 8 & 18); perhaps they are residents of those states.

[6] But Goldner's challenges to the bona fides of the complaint will not go unheeded—they are addressed separately in this opinion.

[7] There is a circuit split as to whether § 1965(b) or (d) provides for nationwide service of process in a RICO case.   See Don't Look Media LLC v. Fly Victor Ltd., 999 F.3d 1284, 1293 n.3 (11th Cir. 2021) (discussing circuit split and reiterating that BCCI Holdings controls).

requiring a defendant to demonstrate that litigation in the forum will be "so gravely difficult and inconvenient that he unfairly is at a severe disadvantage compared to his opponent." Id. at 948 (quotation and citation omitted).

Even putting due process aside, because plaintiffs invoke a federal statute with nationwide service of process to bring in non-resident defendants, they must establish as to those parties that they have a "colorable federal claim," one that is not "so insubstantial" as to be "devoid of merit." Id. at 941-42 (citations omitted). And therein lies the rub.

To state a civil RICO claim, plaintiffs must "plausibly allege" the following six elements: "that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." Otto Candies, LLC v. Citigroup Inc., 137 F.4th 1158, 1196 (11th Cir. 2025) (citation omitted). Plaintiffs allege that Elevance (which was the plaintiff in the Missouri litigation and is also the employer of defendants Burns, Oser, Cohen and Kearney)[8] acted as a RICO

---

[8] Elevance Health, formerly known as Anthem, is a public company with subsidiaries that include various Blue Cross plans. See Docs. 2 at 8, 57 at 4-5. As alleged in their complaint, the Blue Cross plaintiffs in the Missouri litigation were independent licensees of the Blue Cross and Blue Shield Association from over a dozen different states. See W.D. Mo. docket No. 5:18-cv-6037-DGK, Doc. 310 at ¶¶ 25-49, 61. Blue Cross Blue Shield of Florida (Florida Blue) was not among them.

5

enterprise, and the predicate acts forming the "racketeering activity" are violations of 18 U.S.C. § 1512(c)(2), which prohibits corruptly obstructing, influencing, or impeding any official proceeding, which Blake and Gertz allege defendants committed when they fabricated data included on a spreadsheet used as evidence in judicial proceedings resulting in the verdict against Blake and Gertz for over $25 million in damages.

Because plaintiffs bring only a RICO conspiracy claim, they must allege an agreement to commit acts that, if consummated, would constitute a substantive RICO violation. Jackson v. BellSouth Telecomm., 372 F. 3d 1250, 1269 (11th Cir. 2004). However, the illegal agreement must be to commit acts of a "sufficiently continuous nature to constitute a pattern of racketeering activity." Id. To demonstrate a RICO conspiracy, a plaintiff can either "show[ ] that the defendant agreed to the overall objective of the conspiracy," or "show[ ] that the defendant agreed to commit two predicate acts." Otto Candies, 137 F. 4th at 1201 (quoting BCCI Holdings, 119 F.3d at 950).

Defendants raise a number of challenges to plaintiffs' RICO conspiracy allegations. The Court finds their 9(b) argument to be dispositive. Rule 9(b), an exception to Rule 8(a)'s simplified pleading standard, requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Whether a plaintiff 'alleges fraud' under Rule 9(b) depends on the factual allegations underlying plaintiff's

6

claim—not how the plaintiff styles his claim." Pop v. LuliFama.com LLC, 145 F.4th 1285, 1293 (11th Cir. 2025).   Thus, when the allegations underlying a claim "sound in fraud," those allegations must be pled with particularity in compliance with 9(b).   Id.   A claim "sounds in fraud" if the "allegations closely track the elements of common law fraud."   Id. at 1294.   And while "[f]raud has no all-embracing definition," "all agree that it encompasses the following:   A false representation of a material fact made by one who knew that it was false, made to one who did not know it was false, with intent to deceive such person and to influence his action, which did deceive such person and influence his action to his damage."   Id. at 1294-95 (quotations and citations omitted).   "At bottom, the 'basic conduct' that common law fraud targets is 'misrepresenting or concealing material facts.'"   Id. at 1295 (quoting SEC v. Jarkesy, 603 U.S. 109, 125 (2024)); see also Ambrosia Coal & Const. Co. v. Pages Morales, 482 F.3d 1309, 1316 (11th Cir. 2007) (affirming dismissal of civil RICO claims alleging fraud where complaint failed to allege claims as to each defendant with level of specificity required by Rule 9(b)).

Citing Otto Candies, plaintiffs argue that because they have pled only a RICO conspiracy, as opposed to a substantive RICO claim, they do not need to plead the elements of their claim with particularity.   In Otto Candies, the Eleventh Circuit held that while Rule 9(b) governed the predicate acts, Rule 8(a) controlled the agreement element of their RICO conspiracy claim.   Otto

7

Candies, 137 F.4th at 1201.  The Court explained that the plaintiffs did not need to provide direct evidence of the agreement because it could be inferred from the conduct of the alleged participants.  Id.  The Court went on to detail the six different ways plaintiffs had demonstrated through circumstantial evidence an agreement by the defendant bank to join the scheme, including its own admission that some of its employees were criminally involved and that government regulators had concluded its employees were knowingly engaged in the fraudulent scheme, all of which was supported by a chart outlining how the defendant bank had agreed with its co-conspirator to further the RICO enterprise, including dates, locations, sources, and acts in furtherance of the conspiracy.  Id. at 1201-03.

Here, by contrast, the circumstantial evidence of an agreement is insufficient to satisfy Rule 8(a) and, indeed, is not even colorable.  Additionally, the factual predicate plaintiffs claim as support for their conspiracy theory—that the defendants corruptly conspired to obstruct justice by creating a falsified spreadsheet to use as evidence in judicial proceedings with the intent to frame Blake and Gertz in violation of 18 U.S.C. § 1512(c)(2)—sounds in fraud and must be pled with particularity.  Thus, those supporting allegations require far more than what it alleged here.[9]  The who, what, when, where, and how are all

_____

[9] Spadaro v. City of Miramar (upon which plaintiffs rely), involved a different subsection of the federal obstruction statute and its facts are

missing from this complaint.  See, e.g., Ambrosia Coal, 482 F.3d at 1316 (explaining the precision with which a RICO claim sounding in fraud must be pled).   Nor do plaintiffs sufficiently allege how each defendant was involved. Id. (explaining a plaintiff cannot "lump" defendants together in allegations of fraud) (citation omitted).

For example, the entirety of the specific allegations as to defendant Nancy Oser, an Elevance employee called to testify at the Missouri trial, is that she "authenticated the Falsified Spreadsheet at the direction of Kearney [an Elevance employee] and Gleason [Elevance's trial counsel] at the civil trial." Doc. 54 at ¶ 17.   From that, plaintiffs allege Oser "thus joined the conspiracy to obstruct justice;" and "knew the objective of the conspiracy was to use the False Spreadsheet in other trials as well."  Id.   That ipso facto logic is not enough to plead even a colorable RICO conspiracy claim against Nancy Oser sounding in fraud.   The allegations as to the other defendants fare no better.[10] See Courboin v. Scott, 596 F. App'x 729, 733-34 (11th Cir. 2014)[11] (finding

---

distinguishable.   No. 11-61607-CIV, 2012 WL 3027813, at *2 (S.D. Fla. July 24, 2012).

[10] The Court rejects plaintiffs' suggestion that they are excused from meeting this requirement on the grounds that the details of defendants' roles are unavailable to them.   Plaintiffs have filed a serious federal RICO conspiracy claim—under penalty of Rule 11—and must allege sufficient factual material to support it.

[11] The Court relies on unpublished opinions as persuasive authority, not

plaintiff failed to state a colorable RICO claim where his allegations that lawyers and appraisers involved in his divorce proceedings were "in cahoots" lacked any factual allegations to show an enterprise engaging in a pattern of racketeering activity).

Because the amended complaint lacks so much of the detail necessary to describe a RICO conspiracy, there are few inferences available to draw in plaintiffs' favor.   The Court finds the amended complaint does not state even a colorable claim.   Thus, as currently pled, there is no venue as to the non-resident defendants.

The Court has additional specific concerns as to the role of defendant David Goldner, which are raised in the context of his Rule 12(b)(6) challenge.[12]

---

as binding precedent.   See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022).

[12] Because under 18 U.S.C. § 1965(a) personal jurisdiction and venue are satisfied as to Goldner based simply on his residence, the Court proceeds to his 12(b)(6) arguments.   Of course, if the claims against him are dismissed, venue would not be proper here under the RICO statute as to any other defendant as Goldner is the only defendant who is a Florida resident.   This could result in dismissal of the remainder of the action for lack of venue because plaintiffs have not identified any appropriate alternate venue under the RICO statute and they object to the transfer of this case under the general venue statute, 28 U.S.C. § 1391(b).   The Court does not take a position on that issue in this order.   See, e.g., Graceland v. Plutus Enters. LLC, No. 8:21-cv-2356-VMC-CPT, 2022 WL 1212801, *5-7 (M.D. Fla. Apr. 25, 2022) (discussing venue alternatives in a civil RICO case); Riley v. Donatelli, No. 3:16-cv-898-J-34JBT, 2017 WL 3316479, at *8, *8 n.11 (M.D. Fla. Aug. 3, 2017) (collecting cases re: venue alternatives in a civil RICO action).

Goldner's alleged involvement arises out of his employment as an investigator with Florida Blue. Florida Blue was not a party to the Missouri litigation. Goldner was not a witness in the Missouri litigation. The report allegedly prepared by Goldner (though signed by a different Florida Blue employee) regarding Goldner's investigation does not name Blake, Gertz, or their lab, SeroDynamics. Plaintiffs do not allege that the report was admitted into evidence at the Missouri trial. The report reviews lab test billing at three Florida hospitals. The report does not mention Putnam County Memorial Hospital, the 15-bed Unionville, Missouri hospital whose lab test bills were at the heart of the Missouri litigation. The billing referenced in the report was for urine tests, not blood tests. According to the complaint in the Missouri litigation, the questionable bills from Blake and Gertz's lab were for blood tests.[13] The report was addressed to federal law enforcement officials in Jacksonville, not Missouri. The subsequent criminal investigation was in the Middle District of Florida, not in Missouri. It led to the prosecution of a number of defendants related to pass-through billing at the three Florida hospitals named in the report. It did not result in any criminal indictment against Blake, Gertz or SeroDynamics. Neither Blake nor Gertz were called

---

[13] In the Missouri litigation, the parties also stipulated that SeroDynamics was a clinical blood laboratory. See Doc. W.D. Mo. docket No. 5:18-cv-6037-DGK, Doc. 688 at ¶ 15.

11

as witnesses by any party at the criminal trials in the Middle District of Florida. From all appearances, the report does not bear connection to the RICO conspiracy plaintiffs attempt to allege in the amended complaint.

But plaintiffs claim a connection between the report and the allegedly falsified spreadsheet, which they point to as the smoking gun in this case. They allege the spreadsheet was specifically created to corroborate the findings in Goldner's report. But they don't allege that Goldner prepared the spreadsheet. Rather, plaintiffs allege the spreadsheet was created by Paul Burns, a business information developer for Elevance (not Florida Blue), to corroborate the findings in Goldner's report. Goldner's alleged connection to the spreadsheet is that he "believed and hoped the report would be the basis for the creation of falsified evidence," Doc. 54 at ¶ 8, that "Burns conspired with Goldner" when "Burns knowingly depicted" fraudulent data in the spreadsheet, and that Goldner was "in agreement with this plot to create the impression of massive criminal fraud." Id. at ¶ 10.

Those conclusory allegations as to Goldner are not nearly enough to tie him to this alleged conspiracy involving Elevance employees and their trial lawyers, especially where, as outlined above, Goldner's report did not reference Blake, Gertz, SeroDynamics, Putnam County Memorial Hospital, the spreadsheet, or matters related to Elevance. Goldner's alleged conduct does not lead to an inference that he was a participant in the illegal conspiracy

12

scheme plaintiffs are trying to allege in the amended complaint. Cf. Otto Candies, 137 F.4th at 1201-02 (drawing inference of agreement from defendant's conduct); BCCI Holdings, 119 F.3d at 950 (holding that in the absence of direct evidence, an agreement to enter a RICO conspiracy "may be inferred" from the participants' conduct). Plaintiffs' amended complaint fails to state a claim as to defendant David Goldner.

Plaintiffs already amended their complaint once after defendants filed a motion to dismiss plaintiffs' original complaint. But this is the first time the undersigned has considered the bona fides of plaintiffs' claim. The Court is doubtful whether the plaintiffs have a viable case. Nonetheless, the Court is reluctant to dismiss this case out of hand without providing a final opportunity to amend.[14]

---

[14] Because the Court finds the complaint requires further amendment, it does not take up defendants' res judicata or collateral estoppel arguments at this time. However, it is not lost on the Court that when Blake and Gertz tried to secure relief from judgment in the Missouri civil case based in part on the allegedly fabricated data they claim is at the heart of this alleged conspiracy, Judge Kays found Blake and Gertz presented no evidence of fraud. See W.D. Mo. docket No. 5:18-cv-6037-DGK, Doc. 863 at 10-11, Doc. 888 at 6. The Court recognizes Judge Kays' ruling was in a different procedural posture. Nonetheless, if appropriate, defendants may renew those arguments.

13

Accordingly, it is hereby

**ORDERED**:

1.     Defendants' Motion to Dismiss or Transfer Venue (Doc. 57) is **GRANTED** to the extent that plaintiffs' Amended Complaint is dismissed without prejudice to filing a Second Amended Complaint.   The Second Amended Complaint shall be filed no later than **May 1, 2026**.   Failure to file a Second Amended Complaint by **May 1, 2026** will result in dismissal of this case without further notice.   Defendants shall respond no later than **June 4, 2026**. If defendants file a motion to dismiss, plaintiffs shall respond no later than **June 26, 2026**.

2.     The stay of case deadlines and discovery (Doc. 45) will remain in place until further order.

**DONE AND ORDERED** in Jacksonville, Florida this 23rd day of March, 2026.



TIMOTHY J. CORRIGAN
Senior United States District Judge

s.
Copies:
Counsel of record

14