# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Jacksonville, Florida |
| Plaintiff, | Case No. 3:20-cr-86-TJC-JBT |
| vs. | October 22, 2021 |
| JORGE PEREZ, et al., | 9:34 a.m. |
| Defendants. | Courtroom No. 10D |

STATUS CONFERENCE
BEFORE THE HONORABLE TIMOTHY J. CORRIGAN
UNITED STATES DISTRICT JUDGE

COURT REPORTER:

Shannon M. Bishop, RDR, CRR, CRC
221 North Hogan, #150
Jacksonville, FL 32202
Telephone: (904)549-1307
dsmabishop@yahoo.com

(Proceedings recorded by mechanical stenography; transcript produced by computer.)

forward in a moment.

But now we also have this ore tenus request -- or discussion with -- from Mr. Sadow about a Rule 104 hearing. I don't know if the government -- was the government aware of that -- of that issue until this morning? Have you-all discussed that? Or where -- give me any reaction to that.

MR. WINTERS: This was the first I've heard of it. We're aware that there are going to be questions, I would assume -- in a case like this, the defense will question authenticity and admissibility of documents, including claims data. But this is the first I've heard of a 104 request.

THE COURT: All right. Do you have a position on it? Or do you want to consider your position? Or what?

MR. WINTERS: I'd like to be able to confer with Mr. Duva about -- about that. Look, I -- I think there's just some fundamental misunderstanding about what these EDI 837I submissions are.

I would just -- there was reference to the Missouri case, the Missouri civil litigation that Mr. Schwartz referenced. And I would just note that in that -- that was a civil case brought by Anthem against a number of defendants, including some of the people here.

That -- the case went to trial. It was tried about a month ago in Missouri. It was a full victory for the insurance company on their fraud claim. And they had a number of other

claims, civil claims, contract claims. But it was a full victory for the insurance company. In fact, I think they even got punitive damages.

My understanding is -- and I haven't been able to read all the transcripts. And I think some of this was done orally in court.

But I think some of the 837I data, maybe all of the 837I data, was not even admitted at trial. Essentially, here -- let me -- let me see if I can break this down a little bit so the Court understands the 837I data, because it is important.

As Mr. Sadow said, when a claim is submitted from a hospital or from the billing company on behalf of a hospital -- and this is sort of universal in healthcare, that, you know, providers often use billing companies to submit. So in this case it's Empower, or Empower's agent JVS.

A claim is submitted -- a lot of information is provided. So there's the -- there's the name of the patient. There's the service that was provided. There was the referring provider. There's a whole bunch of information that's provided.

Two key pieces of information that go in that claim that are really at issue here is: Who submitted the claim and who was the -- who was the rendering provider and who's the billing provider of the claim?

Those are two different things. Okay?

The submitter -- the submitter of the claim is the entity that -- that is literally pressing the button on the computer to transmit the claim. That's the submitter field.

And that's what we heard about in the argument in April about these 837Is that had been obtained in the Missouri civil litigation, that showed that in the submitter field there was the identity of a -- of one of these independent laboratories, LifeBrite or Pinnacle or Caldera.

SeroDynamics, which was another lab that was used for Putnam -- that's who the trial was against in Missouri. Okay.

So that was in the submitter field. The rendering provider and the billing provider is entirely different. That is the information that passes through the clearinghouse and passes through to the insurer. And that's what's shown on the claims spreadsheets that the insurers have provided to us many years ago, and that we've turned over to the defendants.

In other words, when these -- the submitter is identified as coming from -- when the submitter is identified as coming from the billing company to the clearinghouse -- when the clearinghouse turns around and sends that claim to the insurance company, the submitter becomes the clearinghouse.

That's what I think the defendants are not understanding with respect -- about this data. The submitter and provider are two different things.