# EXHIBIT D

Sangita Rao:

May it please the court. Sangita Rao on behalf of the United States. I'll start with fraud and then go to the juror issue. The evidence here sufficiently proved the fraud and the fraud conspiracy. There are two independent fraud theories that support the convictions. One is that the defendants misrepresented that the hospital performed the tests, especially the expensive definitive tests. And the second one is that the defendants misrepresented that the urine tests were medically necessary. Sufficient evidence on either theory requires rejection of the sufficiency challenge.

What's important for this court's analysis is the district court denied the motion for judgment of acquittal. Notwithstanding any comments it made at sentencing, when it looked at all of the evidence, it found that the evidence was sufficient. There are five overarching facts supporting both the fraud theories and the district court's denial of the acquittal motion. First, there was this massive over-ordering of medically unnecessary urine tests, what Jorge Perez termed liquid gold, particularly those expensive definitive tests, almost $1 billion billed in just about two years.

Speaker 3:

Let me ask you a medical necessity question. So I recognize the government's evidence showed that the pattern of testing was contrary to the standard of care, what you're talking about now. We have two defendants who are not physicians. They're not medically trained. Why should we embrace the theory that the criminal defendants who are not doctors, not medically trained, would be aware of a standard of care?

Sangita Rao:

So we know that doctor's orders can't just insulate non-doctors from fraudulent intent, findings of fraudulent intent. This court said that in Grow, an appellant that we cited, where non-doctors are held. Here, circumstantial evidence can prove intent. Red flags can prove intent. And there were abundant red flags here. There were kickbacks paid to the recruiters to encourage the collection of more specimens. In Gonzalez, that's a clear indicator of fraudulent intent. The expert testified that the huge volume and frequency of the testing made no medical sense at all. It was excessive at scale. We're not talking about just a little bit of excessive testing, there was massive excessive testing.

The defendants billed for 3.7 million definitive tests compared to about 81,000 presumptive tests. That's in government exhibit 25-K. Again, 933 million was billed for definitive testing, 41 million for presumptive. Those ratios are so skewed that it's a red flag. The defendants were not low-level. They owned Empower, the billing company, or were the CFO for Empower. They ran the hospitals. Jorge Perez was in charge of the three hospitals, CGH, RGH, and Putnam. Not necessarily own them, but in control. We cited-

Judge Rosenbaum:

Does the sequence of events of when each hospital was used tell us anything about the scheme?

Sangita Rao:

Yes. That's also part of what this court can rely on for finding intent. They used it as dominoes. When one hospital fell because investigators caught on, they moved to the next hospital. We have evidence that Florida Blue caught on about what was going at CJH. They issued an alert. Defendants knew about the alert. The alert said, "You can't bill like this." They moved it to RGH. They moved to Putnam. At Putnam, fraud is particularly egregious because there there was no capability of testing for months until